# United States District Court
**EASTERN DISTRICT OF TEXAS**
SHERMAN DIVISION

| | |
|---|---|
| DALLAS FALLEN OFFICER FOUNDATION<br>    *Plaintiff*,<br><br>v.<br><br>FREDERICK FRAZIER,<br>DPA's ASSIST THE OFFICER<br>FOUNDATION, INC. and DALLAS<br>POLICE ASSOCIATION,<br>    *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ Civil Action No. 4:18-CV-00481<br>Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Dallas Police Association (the "DPA"), Frederick Frazier ("Frazier"), and the DPA's Assist the Officer Foundation's (the "ATO"), herein after "Defendants," Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 17(b)(2) and Brief in Support, or Alternatively, Motion to Show Authority (Dkt. #61). Having considered the motion and the relevant pleadings, the Court finds that Defendants' Motion is **DENIED**.

## BACKGROUND

Dallas Fallen Officer Foundation (the "FOF") is a Texas nonprofit corporation that provides support and assistance to "the families of police officers killed or seriously injured in the line of duty" (Dkt. #1). While the FOF often responds to the tragic circumstances that surround a fallen officer, the FOF is not alone (Dkt. #1; Dkt. #25). For instance, after the July 7, 2016 sniper attack in downtown Dallas, Texas, the FOF was one of "three charitable organizations to whom the Dallas Police Department directed the public to donate" (Dkt. #1). One of the other charitable organizations designated to receive donations was the ATO (Dkt. #1; Dkt. #25). The ATO, unlike

the FOF, serves as a separate entity of the DPA (Dkt. #1). Although both the FOF and ATO exist to provide charitable services, such charity clearly does not extend to one another.

The FOF and ATO are entangled in what can be described as nothing short of a turf war. On July 6, 2018, that turf war reached its height when the FOF filed the present action against the ATO, DPA, and Frederick Frazier—the Chairman of the ATO and First Vice President of the DPA (Dkt. #1). The FOF claims that the ATO, DPA, and Frazier have "embarked on a scheme to expand their power within and outside Texas by affiliating the DPA and the ATO with an organization known as the Fraternal Order of Police ("FOP") . . ." (Dkt. #1). Put simply, the FOF claims that it has become the ATO's mission to "annihilate" the FOF and create a "monopoly over charitable fundraising for fallen officers" (Dkt. #1). To succeed in this purported scheme, the FOF maintains that Frazier, the ATO, and the DPA engaged in a number of illegal acts (Dkt. #1).

The FOF points to four alleged incidents—or illegal acts—to substantiate its allegations. First, the FOF asserts that the City of Dallas and the ATO entered into an unlawful Donations Management Agreement (Dkt. #1). Under the alleged agreement, the City would intercept and deliver mail to the ATO so that the ATO could deposit the funds into its bank account, regardless of who the donations were for. The agreement occurred only after the DPA was unsuccessful in an attempted merger between the DPA and the FOP—another alleged attempt to "annihilate" the FOF according to the Complaint (Dkt. #1). Second, the FOF asserts that the ATO removed donations from the seized mail, some of which had originally been directed to the FOF, and then deposited those donations into the ATO's account without the FOF's consent (Dkt. #1). This resulted in the alleged misappropriation of over $5,000 belonging to the FOF (Dkt. #1). Third, the FOF asserts that the ATO concealed its theft for over 18 months, despite knowing that each donation was made payable to a party other than the ATO (Dkt. #1). Finally, the FOF asserts that

the ATO lied to "at least one third party using wires for the purpose of diverting donations to the ATO from the [FOF]" (Dkt. #1). The DPA, ATO, and Frazier deny all of the FOF's assertions (Dkt. #25) and further maintain that the FOF simply has "no evidence of its claims" (Dkt. #47). As a result of the FOF's assertions, the FOF brought six claims against the various defendants. Those claims include: (1) Civil RICO under 18 U.S.C. § 1962(c), (d);[1] (2) violations of the Texas Theft Liability Act;[2] (3) tortious interference; (4) money had and received; (5) unjust enrichment; and (6) civil conspiracy (Dkt. #1).

On September 6, 2018, the Court issued the Order Governing Proceedings (Dkt. #12). The Court then entered its Scheduling Order (Dkt. #18) on November 2, 2018. The Court's Scheduling Order set the deadline for the parties to file motions to dismiss, motions for summary judgment, or other dispositive motions for February 1, 2019 (Dkt. #18). On August 13, 2019, however, Defendants filed a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 17(b)(2) and Brief in Support, or Alternatively, Motion to Show Authority (Dkt. #61). According to Defendants, Demetrick Pennie ("Pennie")—the FOF's President—is ineligible to be President as he has served more than three consecutive years (Dkt. #61).[3] Further, Pennie is not listed in the FOF's Certificate of Formation as a Director; thus, he was not permitted to bring this lawsuit on behalf of the FOF (Dkt. #61). Finally, Defendants contend that there "is no evidence that the Board

---

[1] The FOF asserts that the following statutes were violated as the predicate crimes for its RICO claim: (1) the National Stolen Property Act, 18 U.S.C. § 2314 (prohibiting the transportation or transfer of stolen goods, securities, moneys, stamps, or articles); (2) 18 U.S.C. § 1708 (prohibiting theft or receipt of stolen mail); (3) 18 U.S.C. § 1956 (prohibiting laundering of monetary instruments); (4) 18 U.S.C. § 1957 (prohibiting engaging in monetary transactions in property derived from specified unlawful activity); and (5) 18 U.S.C. § 1343 (prohibiting fraud by wire, radio, or television).
[2] *See* TEX. PENAL CODE § 31.03.
[3] Section 6.02 of the FOF's bylaws, the "Term of Office" Section, states:
> Each officer shall serve a one-year term of office and may not serve more than three (3) consecutive terms of office. Unless unamiously elected by the board at the end of his/her three (3) year terms or to fill a vacancy in an officer position, each board officer's term of office shall begin upon the adjournment of the board meeting at which elected and shall end upon the adjournment

3

of Directors authorized the filing of this lawsuit" (Dkt. #61). Thus, Defendants allege that the FOF and its attorneys "cannot demonstrate the required legal authority to file [and prosecute] this lawsuit" (Dkt. #61). In response, the FOF claims that Defendants' Motion is untimely because Defendants failed to comply with the Court's Scheduling Order (Dkt. #66). Moreover, the FOF asserts that, because Defendants did not challenge capacity in their Answer, nor seek leave to amend their Answer, Defendants waived any capacity argument (Dkt. #66). Finally, the FOF provides a "Resolution to Ratify Filing and Prosecution of Lawsuit" ("Resolution") to make clear that the FOF's Board of Directors "unanimously ratified the filing and prosecution of this lawsuit as well as each and every action undertaken by Demetrick Pennie on behalf of the FOF . . . ." (Dkt. #66). Predictably, Defendants replied and argued that the Resolution "fails to meet the legal requirements for ratification" (Dkt. #84).

Accordingly, on the eve of trial, Defendants seek dismissal of this lawsuit pursuant to Rule 17(b)(2) (Dkt. #61). Alternatively, Defendants seek "a determination of the authority" of the FOF's counsel "to file and prosecute this lawsuit" (Dkt. #61). The Court addresses each request in turn.

## LEGAL STANDARD

I.  Motion to Dismiss Pursuant to Rule 17(b)(2)

Federal Rule of Civil Procedure 17(b)(2) provides that the capacity to "sue or be sued" is determined, "for a corporation, by the law under which it was organized." FED. R. CIV. PRO. 17(b)(2). As the Fifth Circuit has stated, "capacity to sue is a defense, and the federal rules require not only that the defendant raise issues of capacity, but [that he] must do so by 'specific negative averment.'" *F.D.I.C. v. Calhoun*, 34 F.3d 1291, 1299 (5th Cir. 1994) (quoting FED. R. CIV. PRO. 9(a)); *see also Young v. Pattridge*, 40 F.R.D. 376, 378 (1966) (quoting FED. R. CIV. PRO. 9(a)).

4

"Defenses objecting to lack of capacity that are not raised are waived." *Id.*; *see also MTO Maritime Transp. Overseas, Inc. v. McLendon Forwarding*, 837 F.2d 215, 218 (5th Cir.1988) ("It is settled law that failure specifically to plead capacity waives the right to object.").

    II.    Motion to Show Authority

Unlike a Motion to Dismiss Pursuant to Rule 17(b)(2), a Motion to Show Authority is not waivable. *See Pueblo of Santa Rosa v. Fall*, 273 U.S. 315, 318–19 (1927) (citing *The King of Spain v. Oliver*, Fed. Cas. No. 7,814, 2 Wash. C. C. 429, 430). Indeed, because a court necessarily retains the inherent authority to question those that are practicing before it "at any stage of the case," the question of authority to prosecute can be raised at any juncture. *Id.*

## ANALYSIS

Defendants claims that the FOF lacks the capacity to bring this action because Demetrick Pennie—the FOF's President—is ineligible to serve as President and thus could not file a lawsuit on behalf of the FOF. Further, Defendants aver that the FOF's attempt to ratify the action, through its Board of Directors, is legally insufficient. Consequently, Defendants request that the Court dismiss this case pursuant to Rule 17(b)(2) (Dkt. #61). Alternatively, Defendants request a determination of the authority of the FOF's counsel to prosecute this case (Dkt. #61). The FOF counters Defendants' Motion with three arguments: (1) Defendants' Motion is untimely; (2) any capacity arguments have been waived; and (3) the Board ratified Pennie's decision to sue Defendants. The Court addresses Defendants' Motion to Dismiss Pursuant to Rule 17(b)(2) in Part I, then turns to Defendants' Motion to Show Authority in Part II.

5

I. Motion to Dismiss Pursuant to Rule 17(b)(2)

Because Defendants possibly waived any capacity defense, which would render the remaining arguments surrounding Defendant's capacity moot, the Court addresses Defendants possible waiver first.

   a. Waiver

The proper standard for raising a 17(b)(2) capacity issue is that "any party who wishes to raise an issue of the capacity of any party to sue or be sued must 'do so by specific negative averment' in the appropriate pleading or amendment or be deemed waived." *Blum*, 649 F.2d at 345 (citing FED. R. CIV. P. 9(a); 5 C. Wright & A. Miller, *Federal Practice & Procedure*, § 1295 (1969)). Here, Defendants do not contest the FOF's argument that any capacity defenses have been waived. Indeed, while Defendants' Reply disputes the waiver of their Motion to Show Authority, Defendants notably fail to acknowledge the FOF's assertion that Defendants waived any capacity argument. Defendants filed their Answer to the FOF's Complaint on August 21, 2018 (Dkt. #11). Absent from their Answer is any defense predicated upon a lack of capacity (Dkt. #11). Defendants also failed to raise the defense a second (Dkt. #21) and third time (Dkt. #25) in their Amended Answer and First Amended Answer, respectively. Thus, over a course of three Answers, spanning over six months, Defendants never mentioned any issue with the FOF's capacity to file or prosecute the present action. Defendant's failure to raise the issue by "specific negative averment" alone is sufficient to deem the matter waived. *See Blum*, 649 F.2d at 345; *Calhoun*, 34 F.3d at 1299.

When Defendants failure to raise the defense is coupled with the gamesmanship that is occurring yet again in this lawsuit,[4] it becomes abundantly clear that Defendants' Motion has been

---

[4] *See* Dkt. #86.

waived. Defendants disregarded the Court's Scheduling Order by filing this Motion six months after the Court's deadline for filing motions to dismiss, motions for summary judgment, or other dispositive motions (Dkt. #18). Moreover, Defendants were aware that there could be a potential issue regarding the FOF's authorization to file this lawsuit, or lack thereof, as early as April 24, 2019 (Dkt. #87). Yet, despite having knowledge that there could be a capacity issue, Defendants sat on this information for four months and waited until the eve of trial to file their Motion to Dismiss. Sitting on such information until the eve of trial is the epitome of untimely. *See Harris v. New Orleans Police Department*, 2013 WL 1335613, *4 (E.D. La. 2013), aff'd, 745 F.3d 767 (5th Cir. 2014). Accordingly, the Court need not address the remainder of the arguments encompassed within this portion of the Motion. Any argument regarding capacity has been waived under Rule 9(a); thus, Defendants Motion to Dismiss Pursuant to Rule 17(b)(2) is denied.

II. Motion to Show Authority

Unlike a Motion to Dismiss Pursuant to Rule 17(b)(2), a Motion to Show Authority cannot be waived as it is the Court, rather than the parties, who retains the plenary power to determine the authority of those before it. *See Fall*, 273 U.S. at 318–19. Beyond the flexible timing of when a Motion to Show Authority may be considered, federal courts have not probed into this area of law with much force. As one court has stated, "[b]ecause a motion to show authority is a creature of Texas's procedural rules, it is unclear whether such a motion exists or is recognized at the Federal stage, and if so, who bears the standard of proof." *Rodriguez v. State Farm Lloyds*, 2016 WL 10804242 at *3 (S.D. Tex. Sept. 13, 2016). While it is evident that a federal court has plenary power to consider a Motion to Show Authority, *Fall*, 273 U.S. at 318–19, the Court need not reach a Motion to Show Authority when authority is readily apparent. Nor does the Court need to

entertain a Motion predicated upon state procedural rules. *Cervantes v. Ocwen Loan Servicing LLC*, is directly on point when it states:

> First, it is questionable whether Plaintiff may rely on Texas Rule of Civil Procedure 12 to challenge Defense Counsel's authority. *Wirsche v. Bank of Am., N.A.*, No. 7:13-CV-528, 2013 WL 6564657, at *2 (S.D. Tex. Dec. 13, 2013) (finding that plaintiff's attempt to force defense counsel to prove authority under Texas Rule of Civil Procedure 12 was inapposite as district courts follow the Federal Rules of Civil Procedure).

2016 WL 10951818 at *1 (S.D. Tex. Oct. 25, 2016). Defendant's cite Rule 12 of the Texas Rules of Civil Procedure for its Motion to Show Authority. The Texas Rules of Civil Procedure, however, are not binding upon the Court. Moreover, "attorneys are presumed to have authority to act on behalf of the party they claim to represent." *Id.* "[T]he Court does not find any reason to question that presumption here." *Id.* Indeed, the FOF demonstrated authority to prosecute the present action through its Resolution which states that the Board "unanimously ratified the filing and prosecution of this lawsuit as well as each and every action undertaken by Demetrick Pennie on behalf of the FOF . . . . (Dkt. #66). Again, Defendants cite Texas law as evidence that the FOF must show its authority because its ratification was insufficient. The Court, however, is not sitting in diversity here; thus, the Court need not apply state law. *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965). The Court finds that the FOF has demonstrated the requisite authority to prosecute this suit. The Board ratified Pennie's decision to file the lawsuit. The Board stated that the lawsuit and prosecution have been "fully disclosed" it. And the Resolution contains a unanimous agreement by the Directors ratifying the present action. As in *Rodriguez*, the Court need not reach the issue of the procedural aspects of a Motion to Show Authority because the FOF's authority has been confirmed. 2016 WL 10804242 at *3. Therefore, Defendant's Motion to Show Authority is denied.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 17(b)(2) and Brief in Support, or Alternatively, Motion to Show Authority is **DENIED** (Dkt. #61).

**SIGNED this 20th day of September, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE